# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TINA PARMER, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:23-CV-00667 |
| | § | Judge Mazzant |
| ENTRUST CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Motion to Transfer Under 28 U.S.C. § 1404(a) (Dkt. #5). Having considered the motion and the relevant pleadings, the Court finds that it should be **GRANTED in part**.

## BACKGROUND

This case arises out of a former employment relationship between Plaintiff Tina Parmer ("Parmer") and Defendants Entrust Corporation ("Entrust") (Dkt. #1 ¶ 6). Parmer claims that Entrust wrongly withheld $644,421 in "stolen commissions" (Dkt. #1 ¶ 27). Therefore, Parmer brought suit against Entrust in the 429th Judicial District Court of Collin County for breach of contract, fraud in the inducement, promissory estoppel, and unjust enrichment (Dkt. #1; Dkt. #2 ¶¶ 38–54). Entrust removed the case to this Court based on diversity jurisdiction (Dkt. #1 ¶ 2).[1]

---

[1] Parmer is a resident of Texas (Dkt. #1 ¶ 4). Entrust is a Delaware corporation with its principal place of business in Minnesota (Dkt. #1 ¶ 4).

Prior to the beginning of Parmer's employment, Entrust sent an offer letter to Parmer outlining important details of the employment relationship (Dkt. #5 at p. 3). Parmer signed this offer letter on August 12, 2020 (Dkt. #5, Exhibit 2 at p. 2). Paragraph 13 of the offer letter states:

> This Offer shall be governed by and construed in accordance with the laws of the State of Minnesota, USA, without reference to conflict of laws principles. Both you and the Company expressly agree that any legal proceeding arising out of this Offer shall be brought in the Federal and State courts located in Hennepin County, Minnesota, and irrevocably submit to the exclusive jurisdiction of such courts.

(Dkt. #5, Exhibit 2 ¶ 13). Parmer also signed and accepted an employment agreement governing her employment relationship with Entrust (Dkt. #5, Exhibit 3 at p. 3). The employment agreement states that the law of Minnesota governs the contract:

> This Agreement is made under and will be governed by and construed in accordance with the laws of the State of Minnesota without regard to conflicts of law principles thereof.

(Dkt. #5, Exhibit 3 ¶ 18). The employment agreement also states all litigation arising out of or relating Parmer's employment or its termination shall be heard in Hennepin Count, Minnesota:

> The parties agree that any litigation arising out of or relating to your employment or its termination will be heard only in courts located in Hennepin County, Minnesota. Company and you hereby (a) consent to the personal jurisdiction of and venue of any state or federal court in such county, (b) waive any objection that such venue is inconvenient or improper, and (c) EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY SUCH LITIGATION.

(Dkt. #5, Exhibit 3 ¶ 20). For the purposes of this Memorandum Opinion and Order, the Court's analysis applies to the forum selection clauses in both the offer letter and the employment agreement (collectively, the "Forum Selection Clauses").

Entrust filed the present motion on July 31, 2023 (Dkt. #5). Entrust requests that the Court dismiss this case pursuant to the doctrine of *forum non conveniens* (Dkt. #5 at p. 1). Alternatively, Entrusts requests that the Court transfer the case pursuant to 28 U.S.C. § 1404(a) (Dkt. #5 at p. 1).

Parmer filed her response on August 14, 2023 (Dkt. #8). Entrust filed its reply on August 21, 2023 (Dkt. #9).

## LEGAL STANDARD

28 U.S.C. § 1404(a) permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of 28 U.S.C. § 1404 "is to prevent the waste of time, energy and money and to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy,

expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*; *TikTok*, 85 F.4th at 358. The plaintiffs' choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile plaintiff[s] ha[ve] the privilege of filing his claims in any judicial division appropriate under the general venue statute, [28 U.S.C.] § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff[s], the plaintiff[s'] choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). However, "a district court abuses its discretion by denying transfer when not a single relevant factor favors the [plaintiffs'] chosen venue." *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318).

## ANALYSIS

Two issues lie before the Court. First, Entrust requests the Court to dismiss the case pursuant to the doctrine of *forum non conveniens*. Second, Entrust requests the Court to transfer the case pursuant to 28 U.S.C. § 1404(a). The Court only addresses Entrust's request to transfer the case because this relief is appropriate. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp.2d 757, 767 (E.D. Tex. 2000) ("[D]ismissal of a case under the doctrine of *forum non conveniens* is improper provided there is an alternative, federal forum in which the case could have been brought.").

"The existence of a mandatory, enforceable [forum selection clause] dramatically alters" the transfer analysis. *Sabal Ltd. LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 916 (W.D. Tex. 2016). This is primarily because "a forum-selection clause . . . may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 66 (2013). In fact, it may "have been a critical factor in their agreement to do business together in the first place." *Id.* As such, "when parties have contracted in advance to litigate disputes in a particular forum," district courts should adjust their usual 28 U.S.C. § 1404(a) analysis in three ways so as not to "not unnecessarily disrupt the parties' settled expectations." *Id.* at 66–67.

First, the plaintiff's choice of forum "merits no weight"; rather, the plaintiff has the burden of establishing that 28 U.S.C. § 1404(a) transfer is unwarranted. *Id.* Second, the court will not consider the private-interest factors. Because the parties have contracted for a specific forum, they "waive the right to challenge the preselected forum as inconvenient." *Id.* at 64. Instead, the court considers only the public-interest factors. *Id.* "Because those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual

cases." *Id.* Cases in which the public-interest factors are sufficiently strong to outweigh a valid forum selection clause "will not be common." *Id.*; *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016).

## I.      Whether the District of Minnesota Would Have Been a Proper Venue

As mentioned, the threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. This requires the court to conduct a proper venue analysis under 28 U.S.C. § 1391(b). Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

Entrust is the sole defendant in this matter. It maintains its principal place of business in Minnesota, where it is also incorporated (Dkt. #1 ¶ 4). Parmer does not dispute this. Thus, Entrust resides in the District of Minnesota, and, accordingly, that district would have been a proper venue for this matter. 28 U.S.C. § 1391(b)(1).

## II.     Mandatory Nature, Applicability, and Enforceability of the Forum Selection Clauses

Before the Court may weigh the public interest factors in the forum selection clause 28 U.S.C. § 1404(a) analysis, the Court must determine that the forum selection clauses at issue are both mandatory and enforceable. *Sabal Ltd. LP*, 209 F. Supp.3d at 916. While federal law governs the enforceability of a forum selection clause, *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997), "the question of enforceability is analytically distinct from the issue of interpretation: [o]nly after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play." *Weber*, 811 F.3d at 770.

The Court finds that, under the applicable law, the Forum Selection Clauses contained in the offer letter and employment agreement are both mandatory and enforceable. The Court discusses each point in turn.

### A. Whether the Forum Selection Clauses in Parmer's Offer Letter and Employment Agreement Are Mandatory or Permissive

The Court must determine whether the Forum Selection Clauses are mandatory or permissive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994). "A party's consent to jurisdiction in one forum does not necessarily waive that party's right to have an action heard in a different forum." *New Orleans v. Mun. Admin. Serv., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *accord Caldas & Sons*, 17 F.3d at 127. "For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *New Orleans*, 376 F.3d at 504 (citing *Keaty v. Freeport Indon., Inc.*, 503 F.2d 955 (5th Cir. 1974)); *see also Weber*, 811 F.3d at 768 (holding that a forum selection clause is mandatory only if it contains clear language specifying that litigation must occur in the specified forum. "[L]anguage merely indicating that the courts of a particular place shall have jurisdiction (or similar) is insufficient to make a[] [forum selection clause] mandatory.").

### 1. Choice-of-Law Determination

Although enforceability of a forum selection clause is analyzed under federal law, where there exists both valid forum selection and choice-of-law clauses, the substantive law identified in the choice-of-law clause governs interpretation of the forum selection clause. *See Atl. Marine*, 571 U.S. at 62 (observing that the lower court "erred in failing to make the adjustments required" because "the transfer motion [was] premised on a forum-selection clause"); *Martinez v. Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014) ("[C]ourts must apply the law contractually chosen by the

7

parties to interpret the [forum selection] clause."). However, a court sitting in diversity applies the forum's choice-of-law rules to determine what substantive law should guide the court's interpretation of the forum selection clause. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).[2] To be sure, "the presence or absence of a specific choice-of-law clause does not alter the core obligation of a federal court, sitting in diversity, to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction." *Weber*, 811 F.3d at 770–71. This action was brought in a Texas federal court, so under *Klaxon*, Texas choice-of-law rules apply. "Texas law gives effect to choice[-]of[-]law clauses regarding construction of a contract." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002)).

Parmer's offer letter and employment agreement both contain choice-of-law clauses. Each document states that it will "be governed by and construed in accordance with the laws of the State of Minnesota, USA . . . " (Dkt. #5, Exhibit 2 ¶ 13; Dkt. #5, Exhibit 3 ¶ 18). Texas courts permit choice-of-law agreements and the default position is that they are enforceable. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990)). To render a choice-of-law provision unenforceable, a party must satisfy the standards in Section 187(2) of the Restatement (Second) of Conflicts of Laws, which provides that:

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either

---

[2] In *Weber*, the Fifth Circuit indicated that neither it, nor the "sister circuits appear to have hewn closely to this principle in interpreting forum selection clauses. The courts have interpreted forum selection clauses according to general common-law contract principles without addressing the precise source of that law." 811 F.3d 758 at 770. It reasoned "[t]he use of this general-law approach may be because, in this circuit and others, the enforceability of a [forum selection clause] is governed by federal law." *Id.*

      (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

      (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice[-]of[-]law by the parties.

*Id.* (quoting RESTATEMENT (SECOND) OF LAWS § 187(2)). Parmer argues that these choice-of-law provisions are unenforceable and that Texas law should govern each agreement based on § 187(2)(b) (Dkt. #8 at pp. 2–7). Specifically, Parmer claims that (1) Texas has the most significant relationship to the parties and transactions giving rise to this case; (2) Texas has a materially greater interest than Minnesota in the enforceability of a given provision; and (3) "Texas has a clear policy against enforcement of venue-selection clauses" (Dkt. #8 at pp. 2–7). The Court only addresses Parmer's third point of whether the application of Minnesota law would be contrary to a fundamental policy of Texas because this issue is dispositive.

      Parmer asserts that "Texas has a fundamental policy that would be contravened by the application of Minnesota law" (Dkt. #8 at p. 6). "Texas makes a distinction between a forum-selection clause and venue-selection clause" (Dkt. #8 at p. 6). She notes that in Texas, "forum-selection clauses are enforceable; however, venue-selection clauses are generally unenforceable" (Dkt. #8 at p. 6). According to Parmer, "[a] 'forum'-selection agreement is one that chooses another state o[r] sovereign as the location for trial, whereas a 'venue'-selection agreement chooses a particular county or court within that state or sovereign" (Dkt. #8 at p. 6) (citing *In re Great Lakes Dredge & Dock Co. L.L.C.*, 251 S.W.3d 68, 73–74 (Tex. App.—Corpus Christi 2008, no pet.)). Therefore, Parmer claims that Texas has a fundamental policy against enforcing venue

9

selection clauses, with limited exceptions, precluding the application of Minnesota law (Dkt. #8 at p. 6–7).

In response, Entrust claims that the Forum Selection Clauses are mandatory and applicable under either Texas or Minnesota law, requiring transfer of the case to Minnesota (Dkt. #9 at p. 4). Among other arguments, Entrust asserts that the cases Parmer relies on (*Cardoni* and *In re Great Lakes*) both deal with interpretations of restrictive covenants, which are not at issue in this case (Dkt. #9 at p. 4). Further, Entrust argues that Parmer's analysis of Texas fundamental policy is irrelevant because the Forum Selection Clauses are forum selection clauses (as opposed to venue selection clauses) under Texas law (Dkt. #9 at p. 4).

Texas state courts utilize a complicated and tiered system of venue statutes. The first tier consists of the general venue rule. Tex. Civ. Prac. & Rem. Code Ann. § 15.002. The general venue rule governs unless a permissive venue statute or a mandatory venue statute applies. *Id.* Next, the second tier consists of the mandatory venue statutes. *Id.* §§ 15.011–15.020 The mandatory venue statutes limit venue to particular settings and override the general venue rule when applicable. *Id.* However, mandatory venue provisions also exist outside of the Texas Civil Practice and Remedies Code. *Id.* § 15.016. Finally, the third tier consists of the permissive venue statutes. *Id.* §§ 15.031–15.040. The permissive venue statutes supplement the general venue rule with additional venue options under certain circumstances. *Id.*

Texas state courts refuse to enforce venue selection clauses that conflict with mandatory venue statutes. Generally, Texas state courts interpret a forum selection clause as selecting the adjudicative body in which jurisdiction is properly invoked, while a venue selection clause selects the geographic place of the trial. *Xia v. Floyd*, 638 S.W.3d 821, 826 (Tex. App.—Fort Worth 2021,

no pet.). Mandatory venue statutes express legislative policy by the Texas legislature as to where a particular suit may be brought. *In re Great Lakes*, 251 S.W.3d at 78. Notably, a statutory exception allows parties to "contract around a mandatory venue statute" in the context of a "major transaction." *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 15.020. Therefore, Texas state courts refuse to honor the parties' selection of venue in a venue selection clause where a mandatory venue statute *itself* designates the particular venue. *See*, *e.g.*, *In re Great Lakes*, 251 S.W.3d at 79 ("We cannot discern any clear legislative intent that would allow us to essentially add an exception to mandatory venue into chapter 15 of the civil practice and remedies code, and we decline to do so."); *Sisk v, BWS Inspection Servs., LLC*, PE:21-CV-00087, 2022 WL 3567349, at *6 n.4 (W.D. Tex. Aug. 16, 2022).

Even assuming Parmer is correct that Texas has a fundamental policy against enforcing venue selection clauses, such a fundamental policy only exists where a venue selection clause implicates a mandatory venue statute. "'[F]undamental policy' is often an elusive concept." *Cardoni*, 805 F.3d at 585.  To determine when a fundamental policy exists:

> [T]he focus is on whether the law in question is a part of state policy so fundamental that courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.

*DeSantis*, 793 S.W.2d at 680. Texas state courts refuse to enforce venue selection clauses when a mandatory venue statute expresses a legislative policy as to where a particular suit may be brought. *See*, *e.g.*, *id.* at 78. Therefore, any such fundamental policy is not relevant in this case, where no statute expresses a legislative policy as to where a particular suit may be brought.[3]

---

[3] Even if Texas possessed a fundamental policy against the enforcement of venue selection clauses generally, the Forum Selection Clauses in Parmer's offer letter and employment agreement are not venue selection clauses. "Texas courts routinely enforce agreements selecting foreign fora as valid forum-selection clauses, regardless of whether the

The enforcement of Minnesota law in this case would not be contrary to a fundamental policy. Thus, the choice-of-law clauses in Parmer's offer letter and employment agreement are valid and enforceable, requiring the application of Minnesota law.

### 2. Application of Minnesota Law

Under Minnesota law, "the primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). When a contract is unambiguous, the "language must be given its plain and ordinary meaning." *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999) (footnotes omitted). A contract is ambiguous only when its terms are "susceptible to more than one reasonable interpretation." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018). "The determination of whether a contract is ambiguous is a question of law, but the interpretation of an ambiguous contract is a question of fact." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (internal citations omitted).

Minnesota law provides further guidance to courts interpreting contracts. Specifically, "courts should 'construe a contract as a whole'" and "'attempt to avoid an interpretation of the contract that would render a provision meaningless.'" *Qwinstar Corp. v. Anthony*, 882 F.3d 748, 754–55 (8th Cir. 2018) (quoting *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn.

---

agreement specifies a particular venue in the chosen forum." *Risher v. Marquette Transp. Co. Gulf Inland LLC*, No. 05-21-00289, 2022 WL 2062875, at *2 (Tex. App.—Dallas June 8, 2022, pet. denied). Several Texas state courts have found similar provisions to the Forum Selection Clauses to constitute forum selection clauses. *See, e.g., In re Nationwide Ins. Co of Am.*, 494 S.W.3d 708. 717 (Tex. 2016) (finding a clause designating Franklin County, Ohio as the place to resolve disputes to be a forum selection clause); *Risher*, 2022 WL 2062875, at *3 (finding a provision requiring disputes to be heard in a specified venue in Kentucky to be a forum selection clause); *Xia*, 638 S.W.3d at 826 (determining that a clause requiring a legal action to be filed in a California state or federal court in Orange or Los Angeles County to be a forum selection clause); *SH Salon L.L.C. v. Midtown Mkt. Mo. City., TX, LLC*, 632 S.W.3d 655, 657 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (finding that a provision mandating venue in Monroe County, New York to be a forum selection clause).

1990)). Additionally, "[w]here there is an apparent conflict between two clauses or provisions of a contract, it is the court's duty to find harmony between them and to reconcile them if possible." *Id.* at 755 (quoting *Nat'l City Bank v. Engler*, 777 N.W.2d 762, 765 (Minn. Ct. App. 2010)).

> The forum selection clause in Parmer's offer letter reads:

> Both you and the Company expressly agree that any legal proceeding arising out of this Offer shall be brought in the Federal or State courts located in Hennepin County, Minnesota, and irrevocably submit to the exclusive jurisdiction of such courts.

(Dkt. #5, Exhibit 2 ¶ 13). The forum selection clause in Parmer's employment agreement states:

> The parties agree that any litigation arising out of or relating to your employment or its termination will be heard only in courts located in Hennepin County, Minnesota . . . .

(Dkt. #5, Exhibit 3 ¶ 20). Entrust argues that the Forum Selection Clauses are mandatory because the language is exclusive given the phrase "*will* be heard *only* in" and both clauses specify the location for litigation (Dkt. #5 at p. 6). Parmer does not, and cannot, argue that the language in the Forum Selection Clause is anything but mandatory. The exclusive language in these provisions is unambiguous. Therefore, the Court finds that, if the Forum Selection Clause are applicable and legally enforceable, the forum selection clause is also mandatory in this suit.

### B.  Applicability of the Forum Selection Clauses

When a forum selection clause is mandatory, a court must also determine whether the causes of action at issue arise under the forum selection clause.[4] *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (citing *Marinechance Shipping Ltd. v.*

---

[4] In the typical analysis, courts consider applicability after enforceability. *See Ginter*, 536 F.3d at 441–45. Here, however, Minnesota law applies to determine whether the forum selection clause is mandatory and whether it is applicable, whereas federal law applies to determine its enforceability. The Court, therefore, adjusted the organization of its analysis for clarity as to which law applies.

*Sebastian*, 143 F.3d 216, 222–23 (5th Cir. 1998)). To make this determination, the Court interprets the Forum Selection Clause to evaluate its applicability to the instant dispute. *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 304 (5th Cir. 2016). Again, because the offer letter and the employment agreement each contain a choice-of-law provision, the Court will apply Minnesota substantive law to determine applicability. As previously stated, regarding the interpretation of contracts, Minnesota law prioritizes the plain meaning of the text, the parties' intentions, and the context of the contract in its entirety.

Entrust argues that the present claims fall within the scope of the offer letter and employment agreement (Dkt. #5 at p. 7). It claims that the Forum Selection Clauses "encompass[] 'any legal proceeding' arising from the offer or 'any litigation arising out of or relating to' [Parmer's] employment with Entrust or its termination" (Dkt. #5 at p. 7). Entrust claims the present dispute falls within the scope of the Forum Selection Clauses' scope because "[Parmer's] claims all relate to her sales incentive compensation, a component of her employment relationship with Entrust . . . ." (Dkt. #5 at p. 6). Parmer does not make any argument about applicability.

The Court of Appeals of Minnesota in *Alpha Systems Integration, Inc. v. Silicon Graphics, Inc.* interpreted a forum selection clause in a renewed reseller agreement that covered dispute "any dispute or controversy between the parties [that] arises out of or is related to" the agreement. 646 N.W.2d 904, 907–09 (Minn. Ct. App. 2002). The appellant argued that it was suing under the prior original reseller agreement, which did not contain a forum selection clause. *Id.* at 908. Thus, the appellant claimed that its claims arose out of the original reseller agreement, not the renewed reseller agreement (which contained the forum selection clause) *Id.* However, the court found that the forum selection clause was "unambiguous and of sufficient breadth to cover claims associated

14

with the relationship of the parties created under the original agreement as well as under the renewal agreement." *Gander Mountain Co v. Lazard Middle Mkt., LLC*, No. A11–221, 2012 WL 118236, at *2 (Minn. Ct. App. Jan. 17, 2012) (citing *Alpha Sys. Integration, Inc.*, 646 N.W.2d at 909).

The Forum Selection Clauses here feature language that is similarly broad. It indicates that "*any* legal proceeding *arising out of*" the offer letter and "*any* litigation *arising out of or relating to* your employment or its termination*"* will be heard only in the courts located in Hennepin County, Minnesota (Dkt. #5, Exhibit 2 ¶ 13; Dkt. 5, Exhibit 3 ¶ 20) (emphasis added). All of Parmer's claims involve her allegedly unpaid commissions and two documents, a sales incentive plan and a special performance fund (*See* Dkt. #1). The entirety of Parmer's claims directly involve her employment relationship with Entrust and Entrust's alleged failure to meet its obligations in the employment relationship (*See* Dkt. #1). The language in the Forum Selection Clauses is sufficiently broad to encompass all of Parmer's claims, each of which arise out of and relate to her employment relationship with Entrust.

Given the text of the Forum Selection Clauses and the instructive Minnesota case law, the Court interprets the Forum Selection Clauses to apply in this dispute.

### C.  Enforceability of the Forum Selection Clauses

Lasty, the court must decide whether the Forum Selection Clauses are enforceable. "We begin with federal law, not state law, to determine the enforceability of a forum-selection clause. Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter*, 536 F.3d at 441 (quoting *Haynsworth*, 121 F.3d at 961. "[F]ederal law applies . . . in both diversity and federal question cases." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974)); see also *Stewart*, 487 U.S. at 32 ("Federal law also governs district courts' decisions "whether to give effect to the parties' forum-selection clause."). Under federal law, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

Parmer makes no argument suggesting that the Forum Selection Clauses are unreasonable. Entrust points out that Parmer has not made such an argument (Dkt. #9 at pp. 2–3) The Court, therefore, finds no reason the Forum Selection Clauses should be deemed unreasonable. Accordingly, the Forum Selection Clauses are enforceable.

### III.    The 28 U.S.C. § 1404(a) Factors

Having found the Forum Selection Clauses are mandatory, applicable, and enforceable, the Court now turns to weigh the public interest factors in the altered forum selection clause 28 U.S.C. § 1404(a) analysis. As discussed, "when parties have contracted in advance to litigate disputes in a particular forum," district courts should adjust their usual 28 U.S.C. § 1404(a) analysis in three

ways so as not to "not unnecessarily disrupt the parties' settled expectations." *Atl. Marine*, 571 U.S. at 66–67.

First, the plaintiff's choice of forum "merits no weight"; rather, the plaintiff has the burden of establishing that 28 U.S.C. § 1404(a) transfer is unwarranted. *Id.* at 66–67. Second, the court will not consider the private-interest factors. Because the parties have contracted for a specific forum, they "waive the right to challenge the preselected forum as inconvenient." *Id.* at 64. Instead, the court considers only the public-interest factors. *Id.*

Parmer has not established that a 28 U.S.C. § 1404 transfer is unwarranted nor that this is an unusual case in which the public factors defeat the motion to transfer. Rather, the Court finds that the facts of this case favor adjudication in Minnesota.

## A. Parmer's Burden to Establish that Transfer is Unwarranted

Parmer does not show that transfer of this case to Minnesota is unwarranted. In fact, she has not made any argument suggesting that transfer of this case to Minnesota is unwarranted. Accordingly, Parmer has not met her burden of showing that transfer of this case to Minnesota is unwarranted.

## B. The Public Factors

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315. The Court will consider each factor in turn.

### 1. The Administrative Difficulties Flowing from Court Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). For this factor, the Court will apply data from September 30, 2023, the closest point available to when the present motion became ripe. *Federal Court Management Statistics*, UNITED STATES COURTS, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1.[5] The median number of months from filing to disposition for civil trials is 8.4 months in the Eastern District of Texas and 7.0 months in the District of Minnesota. *Id.* The median number of months from filing to trial for civil trials is 19 months in the Eastern District of Texas and 38 months in the District of Minnesota. *Id.*

Although, this factor "appears to be the most speculative," these statistics indicate the case would be resolved at a faster, or at least similar, pace in the Eastern District of Texas than in the District of Minnesota. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (affirming lower court assessment that it could dispose of a case more quickly than the transferee venue where the time to disposition was shorter in the transferee venue, but the time to trial was shorter in the transferor venue). Further, "this factor alone should not outweigh several other factors tending one way or another." *ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 WL 5136050, at *6 (E.D. Tex. July 22, 2010) (citing *In re Genentech, Inc.*, 566 F.3d at 1347). This factor weighs against transfer, but only slightly.

---

[5] In *In re TikTok*, the Fifth Circuit held that a court cannot consider post-motion case progress when the court inexcusably delays in ruling on a § 1404(a) motion. 85 F.4th at 364. Based on this reasoning, the Court will consider Federal Court Management Statistics from approximately when the present motion became ripe. *See id.*

### 2.   The Local Interest in Having Localized Interests Decided at Home

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th 413, 435 (5th Cir. 2022) (citations omitted). This factor recognizes that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The Court should "look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435). "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quoting *Def. Distributed*, 30 F.4th at 435). "[T]his factors weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Id.* (quoting *Volkswagen II*, 545 F.3d at 317–18). "Also, this factor can weigh against transfer when the 'citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district].'" *Id.* (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022)).

Entrust argues that this factor favors transfer to the District of Minnesota because "Entrust is headquartered in Minnesota and, though [Parmer] worked outside of Minnesota, many functions of her employment were based in Minnesota." (Dkt. #9 at p. 3). Parmer presents no argument for this factor.

Overall, this factor is neutral because significant local interests exist in both the District of Minesota and the Eastern District of Texas. The District of Minnesota has a significant local

interest because Entrust maintains its global headquarters in Shakopee, Minnesota (Dkt. #9, Exhibit 1 ¶3). *See ACQIS LLC v. EMC Corp.*, 67 F. Supp.3d 769, 779 (E.D. Tex. 2014). For the purposes of this factor, the Court assumes that Parmer lives in the Eastern District of Texas.[6] Therefore, the Eastern District of Texas has a significant local interest in this case. *See Def. Distributed*, 30 F.4th at 435.

### 3.   Familiarity of the Forum with Governing Law

This factor "considers the current district's 'familiarity with the law that will govern the case.'" *TikTok*, 85 F.4th at 365 (quoting *Volkswagen II*, 545 F.3d at 315). Entrust argues this factor favors transfer, while Parmer makes no argument (Dkt. #9 at p. 3) that this factor is neutral (Dkt. #14 at p. 7 n.2; Dkt. #16 at p. 12). The Court finds that both it and federal courts in Minnesota are equally capable of applying Minnesota law. Therefore, this factor is neutral.

### 4.   Avoidance of Conflict of Laws

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" *Def. Distributed*, 30 F.4th at 436 (quoting *Volkswagen II*, 545 F.3d at 315). Entrust argues, without any explanation, that this factor favors transfer (Dkt. #9 at p. 3). Parmer has not presented any argument relating to this factor. The Court finds that both it and federal courts in Minnesota can resolve conflicts of law issues in this case equally well. Therefore, this factor is neutral.

---

[6] Although Parmer is a resident of Texas, where she lives in the state is unclear (*See* Dkt. #2 ¶ 2). "When deciding a motion to transfer under Section 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits and declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 317 (E.D. Tex. 2019). Because neither party specifies where Parmer lives in Texas, the Court assumes she lives in the Eastern District of Texas. *See id.*

## IV.     Summary

The Court finds that one public factor just slightly weighs against transfer and that the other three public factors are neutral. As previously discussed, only in unusual cases will the public factors defeat the motion to transfer when there is a valid, enforceable forum selection clause. Because the Forum Selection Clauses are valid and enforceable and the public factors only slightly weigh against transfer, this is not one of those unusual cases. The Court will thus exercise its discretion and transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

It is therefore **ORDERED** that the Defendant's Motion to Dismiss or, in the Alternative, Motion to Transfer Under 28 U.S.C. § 1404(a) (Dkt. #5) is hereby **GRANTED in part**.

It is further **ORDERED** that this case is **TRANSFERRED** to the United States District Court for the District of Minnesota.

**IT IS SO ORDERED.**

 **SIGNED this 29th day of April, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE